IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**IESHIA WEBSTER**                                                                                              **PLAINTIFF**

V.                              **CASE NO. 5:24-CV-5140**

**ROCKLINE INDUSTRIES, INC.**                                                                  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant Rockline Industries, Inc.'s Motion for Summary Judgment (Doc. 22), to which Plaintiff Ieshia Webster filed a Response in Opposition (Doc. 28), and Rockline filed a Reply (Doc. 29). For the reasons stated below, the Motion is **DENIED**.

### I. BACKGROUND

Ms. Webster was hired by Rockline on August 8, 2022, to work at the company's facility in Springdale, Arkansas. Her primary job was in the auxiliary packout department packing wet wipes into boxes as they came down a conveyor belt, placing the boxed wipes on a pallet, and moving the boxes with a pallet jack to an area where forklift drivers would pick them up. She also reloaded supplies and cleaned the packout area.

On March 27, 2023, Ms. Webster packed wet wipes in auxiliary packout. The following day, she called in to work and reported she was experiencing hand pain radiating to her shoulder blade. She told the Rockline operator that she was worried she was having heart issues and was going to see a doctor. Ms. Webster testified that at the time, she did not believe she had suffered a workplace injury; instead, she thought she was suffering a heart attack or a stroke. *See* Doc. 27-1, p. 6 (Webster Depo.).

Later that same day, the operator passed on the substance of Ms. Webster's call to Rockline's Assistant Safety Manager, Casey Thomas. Ms. Thomas was concerned that Ms. Webster had suffered a work-related injury on March 27, and Ms. Thomas sought to document the incident. She asked Human Resources for Ms. Webster's phone number and called her on March 28, but Ms. Webster did not pick up. Ms. Webster had visited a medical facility called Community Clinic in Fayetteville, Arkansas, on March 28. She was examined by Certified Nurse Practitioner (CNP) Natalie Jobe. *See* Doc. 27-2. After the examination, CNP Jobe sent Ms. Webster home with a note that stated her employer was to excuse her from work on March 28 due to injury and that she could return on April 3—though "with no left handed duty until next follow up." *Id.*

On March 29, Ms. Webster called Rockline to report she was not coming in to work due to thehand injury, but her call was immediately transferred to Ms. Thomas, who instructed Ms. Webster to come in that day to meet with herself and Mark Fougerousse, the facility's Safety Manager. Ms. Webster agreed and reported to the facility, where Ms. Thomas and Mr. Fougerousse instructed her to fill out an incident report for OSHA purposes, which would start the process of filing a Worker's Compensation claim. They also scheduled her to attend a medical appointment that same day and accompanied her to that appointment. Advanced Practice Registered Nurse (APRN) Dominique Carver examined Ms. Webster in the presence of both Ms. Thomas and Mr. Fougerousse, and Ms. Webster informed them that she had already seen a health care provider who had assessed her injury and advised her not to use her left hand. APRN Carver apparently disagreed with that advice and determined that Ms. Webster was fine to return to work immediately "with no restrictions." (Doc. 27-4, p. 2).

Ms. Webster testified that after she, Ms. Thomas, and Mr. Fougerousse left APRN Carver's office on March 29, Mr. Fougerousse told Ms. Webster that she would likely be reassigned to clean the facility rather than return to the production line. (Doc. 27-1, p. 12 (Webster Depo.)). Mr. Fougerousse then spoke with Ms. Webster's line supervisor, Roberto Ayala, and told Ms. Webster that instead she would be doing paperwork. Ms. Webster went home to change clothes and reported again to work, unsure whether she was supposed to clean or do paperwork. She checked in with Ms. Thomas, who instructed her to return to the production line. *See id.* A text message exchange between Ms. Webster and Ms. Thomas appears to confirm this. *See* Doc. 27-5. Ms. Webster testified that she wanted to keep her job, so she reported to auxiliary packout as instructed and finished a shift. She maintains that this aggravated her injury and caused extreme pain.

On April 2, Ms. Webster reported to auxiliary packout for another shift, which she claims caused her so much pain that she began to cry. She complained to her supervisor, Mr. Ayala, and also to Human Resources Manager Gloria Guzman. Ms. Webster testified that she specifically mentioned her need for an accommodation to Ms. Guzman, but Ms. Guzman told her Mr. Fougerousse had made that decision and "was doing his job." *See* Doc. 27-1, p. 13 (Webster Depo.). Ms. Webster further testified that she wrote a letter to the company either on April 2 or April 3 "stating [she] was in excruciating pain, that they [were] forcing [her] to work, and that [she] had a doctor's excuse stating that [she] had restrictions until further investigation." *Id.* at p. 11. No accommodation was offered in response.

On April 3, Ms. Webster failed to show up to work for her scheduled shift, which, according to Rockline's attendance policy (Doc. 22-3), constituted an unexcused

absence. Someone from Rockline called Ms. Webster on April 3 to discuss her absence, but she did not respond. She failed to call in to work again on April 4. According to Rockline's policy, failing to report to work on two consecutive days without excuse justifies termination. *See* Doc. 22-3. Also, as of April 4, Rockline had calculated that Ms. Webster had accrued thirteen unexcused absences over a rolling twelve-month period, which was a separate reason to terminate her. Ms. Webster disputes that Rockline accurately calculated her absences.

Rockline fired Ms. Webster on April 5. She filed the instant lawsuit alleging that Rockline discriminated against her in violation of the Americans with Disabilities Act ("ADA") and Arkansas Civil Rights Act ("ACRA") by failing to engage in the interactive accommodation process, failing to accommodate her documented disability, and creating an environment that left her with no choice but to refuse to come to work. Rockline contends that Ms. Webster never requested an accommodation and was fired for violating the company's attendance policy.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.,* 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See*

Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## III. DISCUSSION

"The ADA bars private employers from discriminating against a 'qualified individual on the basis of disability.' Discrimination is defined to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability.'" *Faidley v. United Parcel Serv., Inc.*, 889 F.3d 933, 940 (8th Cir. 2018) (en banc) (quoting 42 U.S.C. § 12112(a), (b)(5)(A)). In failure-to-accommodate cases under the ADA, a plaintiff must ultimately "establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Hopman v. Union Pac. R.R.*, 68 F.4th 394, 396 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 1003 (2024) (quoting *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 923 (8th Cir. 2018)).

A prima facie case for disability discrimination requires an employee to show that she "(1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action due to [her] disability." *Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 455–56 (8th Cir. 2022) (citations omitted); *Hopman*, 68 F.4th at 402 ("[A]n ADA failure-to-accommodate claim requires proof of a prima facie case of discrimination, which in turn requires proof that the employee suffered an adverse employment decision because of the disability." (citations omitted)). Further, in a failure-to-accommodate case, the plaintiff must ultimately "demonstrate that the employer knew about [her] disability, . . . that the employee requested an accommodation for [her] disability," and "that [her] employer did not make a good faith effort to assist the employee in seeking accommodations." *Mobley*, 53 F.4th at 457 (citation modified).

5

After reviewing the record evidence and the parties' briefing, the Court finds that Ms. Webster has established a prima facie case of disability discrimination. It is undisputed that Rockline was aware that Ms. Webster suffered a disabling hand injury on or about March 27, 2023, and that she visited a medical professional on March 28 who advised her to not perform the same job duties at work for a period of time. Rockline tries to dismiss Ms. Webster's medical note as "not even signed," see Doc. 29, p. 6, but that is clearly false, see Doc. 27-3. There is also a genuine, material dispute as to whether Ms. Webster requested a reasonable accommodation, and, if so, whether Rockline failed to engage in good faith in the required interactive accommodation process. See Sanders v. Union Pac. R.R. Co., 108 F. 4th 1055, 1062–63 (8th Cir. 2024) (explaining employer's burden to engage with the employee in good faith to determine whether a requested accommodation is appropriate and available). The record indicates that Rockline's Safety Manager explicitly acknowledged that Ms. Webster was suffering from a disabling condition, determined she was entitled to an accommodation, identified at least two possible accommodations, and then denied any accommodation. Finally, the jury should be charged with deciding whether Rockline's failure to accommodate Ms. Webster amounted to a constructive discharge, or, in the alternative, whether the failure to accommodate was itself an adverse employment action. See Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 717 (8th Cir. 2003) ("While it is true that a plaintiff cannot state an adverse employment action if he voluntarily resigned, circumstances that rise to a constructive discharge—that is, one in which an employee had no choice but to quit because of the employer's actions—are . . . considered an adverse employment action.").

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Rockline's Motion for Summary Judgment (Doc. 22) is **DENIED**.

**IT IS SO ORDERED** on this 4th day of September, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE